UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| TODD L. NACHTWEIH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:21-cv-00371-SEP |
| | ) | |
| MISSOURI DEPARTMENT OF | ) | |
| CORRECTIONS, et al., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM & ORDER

Before the Court is a Motion to Dismiss filed by Defendants Missouri Department of Corrections, Anne Precythe, Melissa Massman, and Stanley Payne (collectively, MDOC Defendants).[1]  Doc. [4].  The Motion is fully briefed and ready for disposition.  For the reasons set forth below, the Motion is granted.

### BACKGROUND[2]

Plaintiff Todd L. Nachtweih was an inmate at the Eastern Reception, Diagnostic and Correctional Center (ERDCC) in Bonne Terre, Missouri, from September 21, 2017, until September 1, 2019.  Doc. [1] ¶ 1.  His Complaint asserts claims against the Missouri Department of Corrections (MDOC); Anne Precythe, the Director of MDOC; Melissa Massman, MDOC's Director of Operations of Constituent Services; and Stanley Payne, the Warden of ERDCC.  *Id.* ¶¶ 2-5.  Specifically, Plaintiff alleges that the individual MDOC Defendants violated his Eighth and Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983 by acting with deliberate indifference to his serious medical needs.  Doc. [1] at ¶¶ 66-73.  And he alleges that Defendant MDOC violated the Americans with Disabilities Act (ADA), 42 U.S.C. §12132, and the

---

[1] This Order will refer only to the MDOC Defendants and the claims brought against them.  The Court notes, however, that Plaintiff's Complaint also asserts a claim for negligence (Count V) against the MDOC's medical contractor, Corizon, LLC, as well as claims alleging violations of the Eighth Amendment and Fourteenth Amendments pursuant to § 1983 (Count III) and medical practice (Count IV) against 14 individual Corizon employees including doctors, nurses, and a nurse practitioner.  Doc. [1] at 13-17.

[2] For purposes of this Motion, the Court assumes that the factual allegations in the Complaint are true.  *See Neitzke v. Williams,* 490 U.S. 319, 326-27 (1989).

Rehabilitation Act of 1973 (RA), 29 U.S.C. § 794(a), by "fail[ing] to maintain appropriate policies to protect prisoners with [his] disability," failing to provide him access to personal hygiene facilities so that he could properly clean his wounds, and refusing his requests for reasonable accommodations.  *See id.* ¶¶ 41-65.

Throughout his incarceration, Plaintiff suffered from bilateral leg infections, right ankle dysfunction, and Hepatitis C, all of which limited his ability to walk, stand, and care for himself. *Id.* ¶ 25.  On September 27, 2017, medical staff at ERDCC performed an evaluation on him and documented his medical conditions, and on October 2, 2017, it was discovered that Plaintiff was also suffering from a staph infection.  *Id.* ¶¶ 26, 27.  Despite "repeatedly report[ing]" his concerns that he was receiving deficient treatment, his medical conditions worsened during his confinement.  *Id.* ¶¶ 28, 29.  Specifically, because of Defendants' failure to provide him with proper treatment, testing, and monitoring, Plaintiff's leg infection deteriorated and caused him to require skin graft surgery, which he received on July 11, 2018.  *Id.* ¶¶ 30, 31.  While the skin graft was healing, the graft site became infected, and Plaintiff had to be admitted to the Transitional Care Unit (TCU) for additional treatment on August 16, 2018.  *Id.* ¶ 32.  When he returned from the TCU, Plaintiff was placed in administrative segregation (i.e., solitary confinement) from September 6, 2018, through September 11, 2018, during which time the infection worsened until he was again transferred to the TCU, where he remained until October 1, 2018.  *Id.* ¶ 33.  After he was discharged, Plaintiff was again placed in administrative segregation until March 11, 2019.  *Id.* ¶ 34.

Plaintiff alleges that Defendants had no justification for placing him in administrative segregation, and that the conditions of solitary confinement prevented him from receiving the medical care he needed.  *Id.* ¶¶ 35, 36.  Specifically, while he was in administrative segregation, he was not able to obtain medical supplies he ordered or perform medically necessary self-care tasks to control the leg infection, such as taking showers and cleaning his wound.  *Id.* ¶ 35. Plaintiff believes that he was placed in administrative segregation as punishment for his requests for accommodations and for complaining about his inadequate medical treatment.  *Id.* ¶ 37.

Throughout his incarceration, Plaintiff contends that Defendants failed to review and comply with medical care orders from Plaintiff's outside medical providers.  *Id.* ¶ 38.  And despite his doctors' objections to Plaintiff's conditions and lack of proper treatment, "Defendants continued to refuse to provide Plaintiff with the most basic medical care necessary to treat his

conditions." *Id.* ¶ 39.  After his release on September 1, 2019, Plaintiff's skin graft continued to regress, requiring him to seek additional treatment until June 5, 2020.  *Id.* ¶ 40.

LEGAL STANDARD

The purpose of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is to test the legal sufficiency of a complaint.  When considering a Rule 12(b)(6) motion, a court assumes the factual allegations of a complaint are true, *Neitzke*, 490 U.S. at 326-27, and draws all reasonable inferences in the non-movant's favor.  *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 595 (8th Cir. 2009) (citation omitted).

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  In *Bell Atlantic Corp. v. Twombly,* the Supreme Court clarified that complaints must contain "more than labels and conclusions; a formulaic recitation of the elements of a cause of action will not do."  550 U.S. 544, 555 (2007).  To survive a motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 570).  Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 678.  The issue in considering such a motion is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to present evidence in support of the claim.  *See Twombly,* 550 U.S. at 556.

DISCUSSION

**I.**     **Plaintiff fails to state a claim against MDOC for violations of the ADA and RA.**

Plaintiff claims that MDOC violated his rights under both the ADA and the RA.  Doc. [1] ¶¶ 41-65.  Specifically, Plaintiff claims that MDOC failed to implement policies that protected inmates with Plaintiff's disability or similar disabilities from harm by failing to provide sufficient medical care and medical assistive devices, and by not permitting access to facilities that would allow for personal hygiene care or the ability to cleanse wounds.  *Id.* ¶ 45.  He asserts that his lack of access to care and adequate facilities "denied [him] equal access to MDOC services," and that MDOC denied him reasonable medical care when individuals without disabilities and individuals with other disabilities were not denied adequate care.  *Id.* ¶¶ 46, 59.  Plaintiff also alleges that, during his incarceration, he requested reasonable accommodations to

3

allow him to participate "in the activities and benefits accorded to all other individuals . . . of MDOC/ERDCC," but Defendants refused to provide any accommodations. *Id.* ¶ 47.

"Title II of the ADA . . . prohibits qualified individuals with disabilities from being excluded from participation in or the benefits of services, programs, or activities of a public entity." *Randolph v. Rogers*, 170 F.3d 850, 857 (8th Cir. 1999) (citing 42 U.S.C. § 12131 *et seq.*).  To prevail on a Title II ADA claim, a plaintiff must establish: (1) that he is a person with a disability as defined by statute; (2) that he is otherwise qualified for the benefit in question; and (3) that he was excluded from the benefit because of discrimination based upon his disability. *Id.* at 858 (citing 42 U.S.C. § 12131 *et seq.*).  "A qualified individual with a disability is defined as any person who 'meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.'" *Id.* (quoting 42 U.S.C. §12131(2)).  A state prison is a "public entity" under the statute.  *Pennsylvania Dept. of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998).  For all intents and purposes, "[t]he ADA and RA are 'similar in substance' and, with the exception of the RA's federal funding requirement, 'cases interpreting either are applicable and interchangeable.'" *Randolph*, 170 F.3d at 857 (quoting *Gorman v. Bartch*, 152 F.3d 907, 912 (8th Cir. 1998)).

MDOC argues that Plaintiff cannot establish a *prima facie* case under Title II because his ADA and RA claims are based solely on medical treatment decisions.[3]  Doc. [5] at 15.  MDOC points to Eighth Circuit precedent finding that violations of the ADA and RA may not be based on medical treatment decisions.  Doc. [5] at 15 (citing *Burger v. Bloomberg*, 418 F.3d 882, 883 (8th Cir. 2005) (per curiam)) ("[W]e agree with two other circuits that have recently concluded a lawsuit under the [RA or ADA] cannot be based on medical treatment decisions").  Plaintiff argues that his Complaint "demonstrates that [his] claims are not based solely on medical treatment decisions" but rather that he "was denied the benefits of the jail's services due to his disability."  Doc. [16] at 3.  In particular, he notes that he was denied access to the jail's "programs for personal hygiene," and that those "programs" were available to other prisoners without a disability."  *Id.*

---

[3] Defendant leveled several other arguments against Plaintiff's ADA and RA claims as well. Doc. [5] at 18-19.  The Court declines to address those arguments because it finds that Plaintiff's ADA and RA claims fail because his allegations are based solely on medical treatments.

Assuming all of Plaintiff's factual allegations to be true and drawing all reasonable inferences in his favor, *Braden*, 588 F.3d at 595, he fails to plead violations of either the ADA or the RA. There is a difference between alleging inadequate treatment for a prisoner's disability and alleging that a prisoner was denied access to medical services because of his or her disability. *See Postawko v. Missouri Dep't of Corr.* 2017 WL 1968317, at *13 (W.D. Mo. May 11, 2017); *Rogers v. Missouri Dep't of Corr.*, 2011 WL 13051907 (W.D. Mo. Aug. 2, 2011). Plaintiff has done the former, and only the latter is sufficient to plead a claim under the ADA or RA.

In *Postawko v. Missouri Department of Corrections,* the United States District Court for the Western District of Missouri found that a plaintiff did "not merely allege inadequate medical treatment" where the complaint asserted that the MDOC "follow[ed] one policy for inmates with chronic [Hepatitis C] and another policy for inmates with other disabilities under which they do receive lifesaving medications." *Postawko*, 2017 WL 1968317, at *13. There, the plaintiff successfully pled a claim under the ADA because the allegations challenged a policy under which inmates with a certain disability were not provided access to lifesaving medications, while inmates with other disabilities did have access to lifesaving medications. *Id.*; *see also McNally v. Prison Health Servs.*, 46 F. Supp. 2d 49, 58-59 (D. Me. 1999) (rejecting the argument that a plaintiff could allege only that he received poor medical treatment and not bring an ADA claim where the plaintiff demonstrated that the jail refused to provide him with HIV medication but allowed inmates access to medications for other disabilities).

Here, drawing all reasonable inferences in his favor, Plaintiff's claims are based solely on the alleged inadequate care he received related to his infections, ankle dysfunction, and Hepatitis C. *See e.g.*, Doc. [1] ¶ 30 (Defendants failed to provide "proper testing, monitoring and consulting" necessary to treat Plaintiff's conditions); *id.* ¶ 31 (Defendants were deliberately indifferent to his medical needs); *id.* ¶ 35 (Defendants did not allow Plaintiff to perform medically-necessary self-care tasks); *id.* ¶¶ 38, 39 (Defendants did not comply with doctors' orders regarding Plaintiff's care). Plaintiff only vaguely attempts to characterize his treatment as discriminatory by noting that he was discriminated against by Defendant's "withholding [of] medically appropriate treatment that would have cured his disability" when Defendant did not similarly withhold such treatment from individuals without disabilities or with different disabilities. *Id.* ¶ 59. But Plaintiff's bare allegation that he was treated differently than other

5

inmates with respect to his medical conditions is not supported by any factual allegations contained in the Complaint.  Instead, they appear to be "formulaic recitation of the elements" of an ADA or RA claim, which the Court is not required to accept as true.  *Iqbal*, 556 U.S. at 679.

Reading Plaintiff's Complaint as a whole, the Court finds no factual allegations that support a finding that his claims are based on anything other than medical treatment decisions. Those allegations alone cannot support a claim under the ADA or RA, *Burger,* 418 F.3d at 883 (per curiam), and therefore, Plaintiff's Counts I and II against Defendant MDOC must be dismissed.

## II.     Plaintiff fails to state a § 1983 claim for deliberate indifference against the individual MDOC Defendants in their official and individual capacities.

In Count III of Plaintiff's Complaint, he alleges that the individual MDOC Defendants violated his rights secured by the Eighth and Fourteenth Amendments by acting with deliberate indifference to his serious medical need.  "Deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment."  *Holden v. Hirner*, 663 F.3d 336, 342 (8th Cir. 2011) (quoting *McRaven v. Sanders*, 557 F.3d 974, 979 (8th Cir. 2009)).  A deliberate indifference claim "has both an objective and a subjective component."  *McRaven*, 577 F.3d at 980 (quoting *Vaughn v. Gray*, 557 F.3d 904, 908 (8th Cir. 2009)).  "The objective component requires a plaintiff to demonstrate an objectively serious medical need"; "the subjective component requires a plaintiff to show that the defendant actually knew of, but deliberately disregarded, such need."  *Id.* (quoting *Vaughn*, 557 F.3d at 908).

"A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention."  *Holden*, 663 F.3d at 342 (quoting *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997)).  The subjective component—whether a defendant was deliberately indifferent to a serious medical need—requires more than mere negligence.  Rather, it requires a state of mind similar to criminal recklessness.  *Nur v. Olmsted Cnty.*, 2021 WL 4444813, at *13 (D. Minn. Sept. 28, 2021) (quoting *Barton v. Taber*, 820 F.3d 958, 965 (8th Cir. 2016)).  "Such a mental state can be inferred from facts that demonstrate the response to the medical care was obviously inadequate" or by showing that a defendant "intentionally den[ied] or delay[ed] access

to medical care or intentionally interfere[d] with prescribed treatment . . . ."  *Id*. (citing *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976)).

As an initial matter, Plaintiff's claims against the individual MDOC Defendants in their official capacity must be dismissed.  Plaintiff asserts his deliberate indifference claim pursuant to 42 U.S.C. § 1983.  Doc. [1] at 13.  "Section 1983 provides for an action against a 'person' for a violation, under color of law, of another's civil rights."  *McLean v. Gordon*, 548 F.3d 613, 618 (8th Cir. 2008)).  Official capacity claims against employees of the State of Missouri are treated as claims against the state itself.  *See White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2014).  "[N]either a State nor its officials acting in their official capacity are 'persons' under § 1983."  *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *see also Calzone v. Hawley*, 866 F.3d 866, 872 (8th Cir. 2017) (stating that a "State is not a person under § 1983"); *Kruger v. Nebraska*, 820 F.2d 295, 301 (8th Cir. 2016) (stating that "a state is not a person for purposes of a claim for money damages under § 1983").  Moreover, in the absence of a waiver, the Eleventh Amendment bars suit against a state official acting in his or her official capacity.  *Morstad v. Dep't of Corr. & Rehab.*, 147 F.3d 741, 744 (8th Cir. 1998).  Accordingly, the Court must dismiss Plaintiff's claim against the individual MDOC Defendants in their official capacities.

Plaintiff also asserts § 1983 claims against Defendants Precythe and Payne in their individual capacities.[4]  Defendants argue that those should also be dismissed because Plaintiff has not alleged that either Precythe or Payne participated in the conduct that allegedly harmed Plaintiff.  Doc. [5] at 7.  Instead, the Complaint routinely refers to conduct that "Defendants" engaged in without drawing any distinction between the conduct of any one of the individual Defendants, or even between the MDOC Defendants and the Corizon Defendants also named in the § 1983 claim.  *Id.*

Plaintiff counters that Defendants Precythe and Payne may be held individually liable by virtue of their supervisory positions at MDOC and ERDCC.  *See* Doc. [16] at 2.  Precythe, as Director of MDOC was "responsible for . . . adopting, approving, and implementing the policies

---

[4] Plaintiff's Complaint does not specify whether it asserts claims against Defendant Massman in her individual or official capacity, Doc. [1] ¶ 5.  "In a § 1983 action, where a plaintiff's complaint is silent about whether she is suing an individual official in their official or individual capacity, the complaint is assumed to be an official capacity claim."  *Banks v. Slay*, 196 F. Supp. 3d 1021, 1033 (E.D. Mo. 2016) (citing *Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 619 (8th Cir. 1995)).  Therefore, the Court addresses the claim against Defendant Massman in her official capacity only.

[of ERDCC]," and she "is the final policymaker for MDOC." *Id.*; Doc. [1] ¶ 3.  And Payne, as Warden of ERDCC, "was responsible for facility policies . . . [and] monitoring the activities for compliance with state regulations, and the proper treatment of inmates[.]"  Doc. [16] at 2; Doc. [1] ¶ 4.  Thus, Plaintiff argues, he states a claim based upon Defendants Precythe's and Payne's failure to adequately perform their supervisory duties and their implementation of policies that resulted in Plaintiff's harm.  *Id.*

"A supervisor may not be held liable for a deliberate indifference claim under § 1983 for the constitutional violations of a subordinate on a *respondeat superior* theory." *Tlamka v. Serrell*, 244 F.3d 628, 635 (8th Cir. 2001) (citing *Boyd v. Knox*, 47 F.3d 966, 968 (8th Cir. 1995)).  A supervisor can, however, be held liable if he or she "created a policy or custom under which the constitutional violation occurred." *Baude v. City of St. Louis*, 476 F. Supp. 3d 900, 913 (E.D. Mo. 2020) (quoting *B.J.G. ex. rel. McCray v. St. Charles Cnty. Sheriff*, 2010 WL 1838414, at *3 (E.D. Mo. May 6, 2010)) (aff'd *B.J.G. ex. rel. McCray v. St. Charles Cnty. Sheriff*, 400 F. App'x 127 (8th Cir. 2010)).  Liability for a policy or custom "attaches in two situations, where a municipal policy is itself unconstitutional, and where the municipality's deliberate indifference to the need to train and supervise its employees caused an employee to violate a third party's constitutional rights." *A.H. v. St. Louis Ctny. Missouri*, 891 F.3d 721, 728 (8th Cir. 2018) (citing *City of Canton v. Harris*, 489 U.S. 378, 386-90 (1989)).

Here, assuming all of Plaintiff's factual allegations to be true and drawing all reasonable inferences in his favor, he fails to "state a claim to relief that is plausible on its face" with respect to his deliberate indifference claim against Defendants Precythe and Payne. *Iqbal*, 556 U.S. at 678.  The federal pleading requirements mandate more than labels and legal conclusions to state a claim. *See Twombly*, 550 U.S. at 555.  The bare allegations that Defendants did not "properly perform their supervisory duties" and "implement[ed] policies" that harmed Plaintiff do not suffice to state a claim at this stage.  The Complaint does not identify any policy or policies that were implemented or followed that caused harm to Plaintiff.  Nor does the Complaint state the extent to which Defendants Precythe and Payne were personally involved in any policies or decisions that impacted Plaintiff's medical care, if they were involved at all.  Because a supervisor cannot be held liable for a deliberate indifference claim on a *respondeat superior* theory, a bare allegation that an individual was a supervisor charged with either implementing or

adopting policies (Precythe) or monitoring the treatment of inmates (Payne) is not sufficient to state a claim under § 1983.[5]

## CONCLUSION

For the foregoing reasons, Plaintiff fails to state a claim against Defendant MDOC with respect to Count I and II for violations of the ADA and the RA.  He also fails to state a claim against Defendants Precythe, Massman, and Payne for violations of his Eighth and Fourteenth Amendment rights pursuant to § 1983.  Therefore, Defendants' Motion to Dismiss must be granted.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss (Doc. [4]) is **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiff's Counts I and II against MDOC, and Count III against Defendants Precythe, Massman, and Payne are dismissed with prejudice

A separate Judgment shall accompany this Memorandum and Order.

Dated this 31st day of March, 2022.

SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE

---

[5] Because Plaintiff fails to state a § 1983 claim, the Court does not address the individual Defendants' arguments that they are entitled to qualified immunity.  *See* Doc. [5] at 11-13.

9